**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| IRONBURG INVENTIONS LTD,<br><br>    Plaintiff,<br><br>v.<br><br>BATTLE BEAVER, LLC,<br><br>    Defendant. | Case No.: 3:22-CV-00686-X<br><br>Hon. Brantley Starr |

**DEFENDANT BATTLE BEAVER, LLC'S**
**MOTION TO DISMISS THE COMPLAINT**

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES ................................................................................................... ii-iii

INTRODUCTION ......................................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................................ 3

PLEADING STANDARD ............................................................................................................. 6

    A. Rule 8(a) requires Plaintiff to state a plausible claim for relief. .......................................... 6

    B. The Supreme Court applies a two-stage test for patent ineligibility under Section 101. ...... 7

ARGUMENT .................................................................................................................................. 8

    A. The claims at issue (as constructed by Plaintiff) are directed at an abstract idea. ................ 9

    B. If the claims at issue add an inventive concept to an abstract idea, they do so only if given their plain meaning. ................................................................................................................. 10

CONCLUSION ............................................................................................................................ 13

# **TABLE OF AUTHORITIES**

**Cases**

*Affinity Labs of Tex., LLC v. DIRECTV, LLC*,
  838 F.3d 1253 (Fed. Cir. 2016) .......................................................................................... 9, 10

*Alice Corp. Pty. Ltd. v. CLS Bank Intern.*,
  573 U.S. 208 (2014) ............................................................................................................ 2, 10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................................ 6, 12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................................ 6, 12

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
  776 F.3d 1343 (Fed. Cir. 2014) ................................................................................................ 7

*Elec. Power Group, LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016) ................................................................................................ 7

*Ferrer v. Chevron Corp.*,
  484 F.3d 776 (5th Cir. 2007) .................................................................................................... 6

*Great Atl. & Pac. Tea Co. v. Supermarket Equip. Corp.*,
  340 U.S. 147 (1950) ................................................................................................................. 8

*GREE Inc. v. Supercell OY*,
  No. 2:19-CV-70JRG-RSP, 2020 WL 896771 (E.D. Tex. Jan. 21, 2020) ................................. 8

*Hubbell Inc. v. Watt Stopper, Inc.*,
  No. A-08-CV-616-LY, 2010 WL 11519467 (W.D. Tex. Apr. 8, 2010) ................................. 10

*In re TLI Commc'ns LLC Patent Lit.*,
  823 F.3d 607 (Fed. Cir. 2016) .................................................................................................. 7

*Internet Patents Corp. v. Active Network, Inc.*,
  790 F.3d 1343 (Fed. Cir. 2015) ................................................................................................ 7

*NetSoc, LLC v. Match Group, LLC*,
  No. 3:18-CV-01809-N, 2019 WL 3304704 (N.D. Tex. July 22, 2019) ................................... 9

*Ottah v. Fiat Chrysler*,
  884 F.3d 1135 (Fed. Cir. 2018) .............................................................................................. 12

*Pfaff v. Wells Elecs., Inc.*,
  525 U.S. 55 (1998) ............................................................................................................. 1

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) ....................................................................................... 10

*Rubber-Tip Pencil Co. v. Howard*,
  87 U.S. 498, 22 L. Ed. 410 (1874) .................................................................................... 8

*SAP America, Inc. v. InvestPic, LLC*,
  898 F.3d 1161 (Fed. Cir. 2018) ......................................................................................... 9

*Ultramercial, Inc. v. Hulu, LLC*,
  772 F.3d 709 (Fed. Cir. 2014) ........................................................................................... 7

**Statutes**

35 U.S.C. § 101 ............................................................................................................. 1, 2, 7, 8

**Rules**

Fed. R. Civ. P. 8(a) ................................................................................................................ 6

Defendant Battle Beaver, LLC ("**Battle Beaver**" or "**Defendant**") brings this motion pursuant to Federal Rules of Civil Procedure 8(a) and 12(b)(6) on the ground that the complaint for Patent Infringement (the "**Complaint**") filed by plaintiff Ironburg Inventions Ltd. ("**Ironburg**" or "**Plaintiff**") fails to state a plausible claim for patent infringement of U.S. Patent Nos. 10,188,940 (the "**'940 Patent**"), 10,596,455 (the "**'455 Patent**"), and 11,185,766 (the "**'766 Patent**") (collectively, the "**Patents**"). Specifically, Defendant moves the Court to dismiss the Complaint because the asserted claims either contain limitations that Defendant did not infringe, or the Patents are directed to patent ineligible subject matter under 35 U.S.C. § 101. Together with the Request for Judicial Notice ("**RJN**") filed herewith, Defendant states as follows.

## INTRODUCTION

Through this lawsuit, Plaintiff attempts to wield its Patents for a particular trigger-block design to obtain a monopoly over the concept of trigger blocks writ large. This would serve only Plaintiff's bottom line at the expense of inventors' ability to develop new and better trigger block mechanisms. Plaintiff's infringement claims thus strike at the very heart of patent law, which is founded on "the balance between the interest in motivating innovation and enlightenment by rewarding invention with patent protection on the one hand, and the interest in avoiding monopolies that unnecessarily stifle competition on the other." *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 63 (1998). The case should be dismissed.

Plaintiff and Defendant both offer customized videogame controllers that modify stock features on Xbox and PlayStation controllers. Plaintiff is a dominant player in the controller market. Over the past decade, it has obtained over 150 patents for controller designs and modifications, including for adjustable mechanisms that allow the user to change the range of motion of the triggers that sit on the back of most videogame controllers. Defendant is a small business in the controller market with its own patented mechanism to limit the range of motion

1

of the triggers on videogame controllers. Over the past few years, Defendant's controllers have attracted significant positive attention from influential professional gamers who claim to prefer Defendants' design. As a result, Plaintiff has taken increasingly brazen efforts—first with cease-and-desist letters, and now with this lawsuit—to strongarm Defendant out of the market.

But since Defendant's trigger-block design does not copy any defining feature of Plaintiff's trigger-block designs, Plaintiff is left to argue that its Patents create a monopoly over the very concept of trigger blocks in videogame controllers. While this tactic may succeed in driving up litigation costs for Defendant and Plaintiff's other smaller competitors, it has no support in law or common sense.

In short, this case must proceed on one of two paths—both of which lead to the dismissal of this action. On the one hand, if the Court analyzes this case using Plaintiff's wildly overbroad reading of its Patents, the Court must find that the Patents are invalid under 35 U.S.C. § 101 and dismiss the case. The Supreme Court has held that section 101 contains an implied exception to patentability for abstract ideas. *Alice Corp. Pty. Ltd. v. CLS Bank Intern.*, 573 U.S. 208, 216 (2014) (Thomas, J.). Thus, for example, an inventor may not patent the idea of a mousetrap but may patent a specific mousetrap design. Competitors may not copy the design but are free to invent a better mousetrap. In this case, inventors have patented ways to block triggers as long as triggers have existed. Plaintiff's claims amount to the proposition that those efforts end with its Patents. Nonsense. To find that Plaintiff has validly patented trigger blocks would be the very definition of "inhibit[ing] further discovery by improperly tying up the future use of [. . .] building blocks of human ingenuity." *Id.* (citations omitted).

On the other hand, if the Court recognizes the limitations of the Patents that Plaintiff ignores—leaving aside the question of whether those limitations are sufficiently inventive to pass

2

muster under *Alice*—it becomes plainly evident that Defendant is not infringing. Each of the Patents are limited insofar as they state that the invention "provid[es] a game controller which includes an ***adjustable*** trigger system" allowing a user to "control or recalibrate the maximum and/or minimum trigger positions." To date, Plaintiff does not (and likely will not) press this limitation for the simple fact that Defendant's allegedly offending trigger-block designs ***are not adjustable*** by the end user and do not allow the user to "control or recalibrate" anything. Thus, for the Patents to survive *Alice*, Plaintiff must concede that Defendant is not infringing, and the case must be dismissed.

Under either path forward, Plaintiff simply cannot plausibly state a claim for infringement. And the Court need not undertake a costly claim-construction hearing to reach the inevitable conclusion that the Complaint must be dismissed.

## **FACTUAL BACKGROUND**

Stock videogame controllers typically include two triggers on the right and left rear portions of the controllers.[1] While some actions in a game—such as firing a gun—may require the user to fully depress the triggers, videogame makers like Xbox and PlayStation have released games where pressing the trigger initiates an action before it is fully depressed. For those games, a full depression of a trigger results in a marginal waste of time and energy, which could prove costly in games that depend on speed.[2] For instance, in a shooting game, a player using a controller with a trigger that has a range of motion limited only to the extent necessary to fire a gun in the game would be able to fire more rapidly than a player using a typical controller.

---

[1] Compl., Ex. A col. 1, l.27–34.

[2] *Id.* at col. 1, l.35–42.

3

As a result, users seeking every advantage flocked to hardware stores to fashion bolts and other implements to decrease the depressible range of their triggers, bragging about their do-it-yourself designs on YouTube. In addition, companies selling customized controllers devised various types of trigger-block designs to address the issue.[3] This included Plaintiff, which obtained the three Patents directed to improve videogame controller triggers. The United States Patent and Trademark Office ("**USPTO**") issued the Patents on January 29, 2019 (the '940 Patent), March 24, 2020 (the '455 Patent), and November 30, 2021 (the '766 Patent). The background section for each of the Patents makes clear that the invention was directed to provide users with a manually adjustable trigger mechanism:

> The present invention seeks to improve upon or at least mitigate some of the problems associated with controllers of the prior art by providing a game controller ***which includes an adjustable trigger system that has a mechanism to allow the end user to control or recalibrate the maximum and/or minimum trigger positions***.[4]

Likewise, the summary section for each of the Patents repeats that "the adjustable trigger system of the present invention now provides the option to customize the trigger settings[.]"[5] In addition, Plaintiff's designs allowed the user to control both the starting and ending point of the trigger.[6]

On June 4, 2019—*i.e.*, shortly after the '940 Patent but before the '455 and '766 Patents—Defendant's CEO, David Christopher Bailey, obtained his own patent for a trigger-block design, which Defendant offered as an optional modification in its customized controllers.[7]

---

[3] *See, e.g.*, RJN Ex. E at APP026 (U.S. Pat. No. 9,908,040 (filed Nov. 25, 2014), describing the subject invention as a "system[] for adjusting the trigger mechanism such that a set stop position may be achieved during game play").

[4] Compl., Ex. A col. 1 l.56–61; Ex. B col.1 l.57–62; Ex. C col. 1 l.57–62 (emphasis added).

[5] *Id.* at Ex. A col. 1 l.66–col. 2 l.68; Ex. B col. 1 l.67–col. 2 l.3; Ex. C col. 1 l.66–col. 2 l.3.

[6] *Id.* at Ex. A col. 1 l.56–61; Ex. B col.1 l.57–62; Ex. C col. 1 l.57–62.

[7] *See* RJN Ex. F at APP030 (U.S. Pat. No. 10,307,668).

Notably, Bailey's design is not adjustable for the user. Nor did Bailey's design affect the starting position of the trigger. Instead, Bailey removed the progressive nature of the trigger pull and replaced it with a "snap-action" switch that required only a minimal pull to replicate a full depression of the trigger, essentially converting the trigger to something approximating the click of a mouse button.[8] Bailey also developed a "racer trigger" that kept the progressive nature of the trigger in place through half of its pull before activating the snap-action switch. This allowed for the user to activate the trigger progressively in racing games (*e.g.*, to slowly accelerate a car), while still eliminating the need for a full trigger pull to activate an action that would typically require a complete depression.

Not coincidentally, two days after Bailey's patent was issued, Plaintiff commenced a harassment campaign to force Bailey's alternative design out of the market.[9] Notwithstanding the fact that Bailey's trigger-block design operated differently and accomplished different objectives, Plaintiff claimed that the '940 Patent covered ***anything*** behind the trigger "that prevent[s] the trigger from having to travel all the way down."[10] On November 5, 2019, Defendant's patent counsel advised Plaintiff that both the specification and the claims of the '940 Patent expressly contemplates adjustable mechanisms, and that Defendant's controllers were in no way adjustable.[11] While Plaintiff's December 2019 response tacitly conceded that Defendant's trigger mechanism was not adjustable, Plaintiff nevertheless repeated its position

---

[8] *Id.* at col. 2, l.41–53; col. 5, l.15–18.

[9] RJN Ex. A at APP002 (Letter from Scuf Gaming to Chris Bailey and Battle Beaver Customs, dated June 6, 2019).

[10] RJN Ex. B at APP 005 (Letter from Scuf Gaming to Chris Bailey and Battle Beaver Customs, dated November 5, 2019).

[11] RJN Ex. C at APP012–13 (Email exchange dated from November 13, 2019, through January 22, 2020, between Michael Greenberg, patent counsel for Defendant, and Robert Dulaney, counsel for Plaintiff).

that the '940 Patent covered any trigger blocks that blocked the pathway of the trigger.[12] Defendant's counsel once again responded that to the extent there was any ambiguity in the claims themselves, the background and summary of the '940 Patent made clear the invention was of an adjustable mechanism.[13]

Plaintiff's counsel sent additional letters in September and December 2020, adding references to the newly issued '455 and '766 Patents. But since these Patents also expressly contemplated adjustable mechanisms, Defendant decided to no longer engage in Plaintiff's attempts to intimidate. Plaintiff commenced this suit on March 24, 2022.

## PLEADING STANDARD

### A. Rule 8(a) requires Plaintiff to state a plausible claim for relief.

To survive a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted, "a plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a). This requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Dismissal under Rule 12(b)(6) is warranted when the complaint fails to state a claim that is factually plausible and legally viable even when all of its factual allegations are presumed to be true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). However, the Court need not presume "conclusory allegations, unwarranted factual inferences, or legal conclusions" to be true. *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007).

---

[12] RJN Ex. D at APP020 ("[W]e understand that the 'smart trigger' mechanism and/or 'racer trigger' mechanism installed in the trigger pathway shortens the trigger's range of motion from the original range of motion. As a result, these features of the Battle Beaver controllers infringe multiple claims of the '940 Patent[.]").

[13] RJN Ex. C at APP008–09 (Email exchange dated from November 13, 2019, through January 22, 2020, between Michael Greenberg, patent counsel for Defendant, and Robert Dulaney, counsel for Plaintiff).

### B. The Supreme Court applies a two-stage test for patent ineligibility under Section 101.

Section 101 provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor[.]" 35 U.S.C. § 101. This provision "contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." 573 U.S. at 216. Only if section 101 is satisfied "is the inventor allowed to pass through to the other requirements for patentability." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718 (Fed. Cir. 2014). Courts have thus consistently held that it is appropriate to consider section 101 patentability on a motion to dismiss without necessity of claim construction. *See, e.g.*, *In re TLI Commc'ns LLC Patent Lit.*, 823 F.3d 607, 609 (Fed. Cir. 2016) (affirming 12(b)(6) dismissal of infringement claim on ground that patent was directed to abstract idea of classifying and storing digital images); *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348–49 (Fed. Cir. 2015) (affirming 12(b)(6) dismissal where patent was directed to abstract idea of "retaining information in the navigation of online forms"); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (affirming 12(b)(6) dismissal where claims directed the use of generic technology to "perform well-understood, routine, and conventional activities commonly used in industry.").

The Supreme Court established a two-stage framework for determining patentability under section 101. **First**, the Court must decide whether the claim at issue is "directed to" an abstract idea or other patent-ineligible concept. *Alice*, 573 U.S. at 218. As the Federal Circuit explained, a claim is directed to an abstract idea if it identifies a problem, but then "purport[s] to monopolize every potential solution to the problem." *Elec. Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1356 (Fed. Cir. 2016). **Second**, if the Court finds that the claims at issue are

7

directed toward an abstract idea, it must next determine whether the claim includes a limitation with an "inventive concept" that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [abstract idea] itself." *Id.* (quoting *Mayo*, 566 U.S. at 77).

Should claim construction be necessary to conduct a section 101 analysis at the Rule 12(b)(6) stage, "the Federal Circuit has held that courts may proceed by either adopting the non-moving party's constructions or by resolving the disputes to whatever extent is needed to conduct the § 101 analysis." *GREE Inc. v. Supercell OY*, No. 2:19-CV-70JRG-RSP, 2020 WL 896771, at *8 (E.D. Tex. Jan. 21, 2020), *report and recommendation adopted*, No. 2:19-CV-70-JRG-RSP, 2020 WL 887733 (E.D. Tex. Feb. 24, 2020). Here, as further explained below, the Court should reach the same result whether it adopts Plaintiff's or the Defendant's reading of the claims at issue.

## **ARGUMENT**

It is bedrock law that "an idea of itself is not patentable." *Alice*, 573 U.S. at 218 (quoting *Rubber-Tip Pencil Co. v. Howard*, 87 U.S. 498, 507, 22 L. Ed. 410 (1874)). Since the country's founding, Supreme Court jurisprudence is littered with cases reining in attempts to patent mere ideas. *Great Atl. & Pac. Tea Co. v. Supermarket Equip. Corp.*, 340 U.S. 147, 155 (1950) (collecting cases) (Douglas, J., concurring). In the recent *Alice* decision, the Supreme Court established a two-part framework to determine whether a claim is directed toward an unpatentable idea. Applying its own construction of the claims at issue, Plaintiff fails this test. First, to the extent the claims purport to cover ***any*** internal mechanism for blocking a trigger, they are directed to an abstract idea. Second, Plaintiff denies any limitation of the claims that would render them patentable. But if the Court were to adopt a natural reading of the claims

sufficient to at least arguably render the claims patentable, Plaintiff does not (and cannot) plausibly allege infringement.

### A. The claims at issue (as constructed by Plaintiff) are directed at an abstract idea.

The Supreme Court defines abstract ideas as "building blocks of human ingenuity" that, if tied up by a patent, would "inhibit further discovery." *Alice*, 573 U.S. at 216. In applying this test, the Federal Circuit has underscored the "common-sense distinction between [patenting] ends sought and particular means of achieving them." *Electric Power Group*, 830 F.3d at 1356. According to Plaintiff's own cease-and-desist letters—which are incorporated by reference in the Complaint—Plaintiff asserts that the claims at issue cover *any* "mechanism installed in the trigger pathway [that] shortens the trigger's range of motion from the original range of motion."[14] Such a sweeping interpretation clearly lacks the "specificity required to transform a claim from one claiming only a result to one claiming a way of achieving it." *NetSoc, LLC v. Match Group, LLC*, No. 3:18-CV-01809-N, 2019 WL 3304704, at *2 (N.D. Tex. July 22, 2019), *aff'd*, 838 Fed. Appx. 544 (Fed. Cir. 2020) (quoting *SAP America, Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018)).

Even a cursory review of prior art confirms this result. *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016) ("The 'abstract idea' step of the inquiry calls upon us to look at the 'focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded subject matter."). For well over a hundred years, the U.S. Patent and Trademark Office has issued numerous patents for a variety of different "mechanisms installed in trigger pathways that shorten the trigger's range of motion

---

[14] *See, e.g.*, RJN Ex. D at APP020.

from the original range of motion."[15] Plaintiff's proposed claim construction would seek to patent the very foundation that each of these patents are built upon. And while most (but not all[16]) of these patents deal with firearm triggers, "[t]he Supreme Court and [the Federal Circuit] have repeatedly made clear that merely limiting the field of use of the abstract idea to a particular existing technological environment does not render the claims any less abstract." *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1259 (Fed. Cir. 2016).

In short, as long as there have been triggers, the idea of blocking the path of the trigger has served as a "building block of human ingenuity." *Alice*, 573 U.S. at 216. The Court should not allow Plaintiff to assert a patent tying up that building block, thus cutting off future efforts to design new and better trigger-blocking mechanisms.

### B. If the claims at issue add an inventive concept to an abstract idea, they do so only if given their plain meaning.

The second stage of the *Alice* test requires the Court to consider whether the claims at issue contain any limitations that add an "inventive concept . . . sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id.* at 217. As explained above, Plaintiff insists that its claims have no relevant limitation such that they own a patent over ***any*** "mechanism installed in the trigger pathway [that] shortens the trigger's range of motion from the original range of motion."[17] Read as such, the claims clearly fail the *Alice* test for patentability under section 101.

---

[15] *See, e.g.*, RJN Exs. G at APP044 (U.S. Pat. No. 2,068,289 (filed Nov. 27, 1935), H at APP049 (U.S. Pat. No. 4,499,684) (filed Mar. 7, 1984)), I at APP056 (U.S. Pat. No. 5,724,760 (filed Mar. 24, 1997)), J at APP064 (U.S. Pat. No. 6,843,013 (filed Apr. 21, 2003)), K at APP077 (U.S. Pat. No. 9,638,485 (filed May 28, 2015)).

[16] *See, e.g.*, RJN Ex. E at APP023 (U.S. Pat. No. 9,908,040 (filed Nov. 25, 2014)).

[17] RJN Ex. D at APP020 (emphasis added); *see also* RJN Exs. A at APP002, B at APP005.

In reality, however, the claims at issue each contain a significant limitation. Specifically, the claims contemplate trigger block mechanisms that are manually adjustable, allowing the user to control and calibrate the depressible range of the trigger. This is made clear in the specification of each of the Patents.[18] For instance, the background section for each Patent describes Plaintiff's invention as "a game controller which includes ***an adjustable trigger system that has a mechanism to allow the end user to control or recalibrate the maximum and/or minimum trigger positions***."[19] Likewise, the summary section for each of the Patents states that "the adjustable trigger system of the present invention now provides the option to ***customize the trigger settings***."[20]

The language contained in each of the relevant claims themselves also contain language limiting the claim to a mechanism that is manually adjustable and controllable by the user:[21]

| Claim | Adjustability Language |
| --- | --- |
| '940 claim 1 | "mechanism for manual adjustment of a range of motion" (Ex. A, col. 1, l.58–64) |
| '940 claim 2 | "a first mechanism for adjusting a first end stop position of a range of motion" (Ex. A, col. 8, l.1–3) |
| '940 claim 4 | "a mechanism which provides for manual adjustment" (Ex. A, col. 8, l.20–22) |
| '940 claims 5, 8 | "a trigger adjustment system that allows for manual adjustment of a range of motion" (Ex. A, col.8, l.26–28; col. 8, l.47–49) |
| '940 claim 6 | "a stop adjustably positioned to engage at least one depressible trigger" (Ex. A, col. 8, l.33–35) |

---

[18] To understand a patent's claims, they must be read together with the specification. *See Hubbell Inc. v. Watt Stopper, Inc.*, No. A-08-CV-616-LY, 2010 WL 11519467, at *2 (W.D. Tex. Apr. 8, 2010) ("To ascertain the meaning of claims, the court looks primarily to the intrinsic evidence: the claims, the specification, and the patent's prosecution history.") (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314-17 (Fed. Cir. 2005)).

[19] Compl., Ex. A col. 1 l.56–61; Ex. B col.1 l.57–62; Ex. C col. 1 l.57–62 (emphasis added).

[20] *Id.* at Ex. A col. 1 l.66–col. 2 l.68; Ex. B col. 1 l.67–col. 2 l.3; Ex. C col. 1 l.66–col. 2 l.3 (emphasis added).

[21] This chart only includes independent claims. The dependent claims incorporate the limitations from the independent claims, and thus are likewise deficient.

11

| | |
|---|---|
| '455 claim 1 | "a mechanism for adjustment of a range of motion" (Ex. B, col. 8, l.4–5) |
| '455 claim 12 | "the trigger stop configured to adjust a range of motion" (Ex. B, col. 8, l. 54–55) |
| '455 claim 17 | "the trigger adjustment system configured to adjust a range of depressible motion" (Ex. B, col. 10, l.6–8) |
| '766 claim 1 | "the mechanism configured to adjust a length of the travel path of the depressible trigger" (Ex. C, col. 8, l.7–9) |
| '766 claim 12 | "a stop mechanism configured to adjust a range of motion of a depressible trigger" (Ex. C, col. 8, l.59–60) |
| '766 claim 17 | "the trigger stop configured to change a range of depressible motion of the trigger" (Ex. C, col. 10, l.12–13) |

These limitations are critical because Defendant's allegedly infringing "smart trigger" and "racer trigger" ***are not manually adjustable***.[22] Thus, Plaintiff is in a Catch-22 of its own making. Either they disclaim the manual adjustability limitation on the claims in issue, thus rendering their claims invalid under section 101, or they acknowledge this clear limitation, which would warrant dismissal for lack of infringement.

Given this context, there is no plausible claim construction that could result in a finding of infringement. *See Ottah v. Fiat Chrysler*, 884 F.3d 1135, 1141 (Fed. Cir. 2018) (affirming district court's grant of a motion to dismiss on the ground that claims could not plausibly support plaintiff's proposed claim construction). As a result, Plaintiff is simply unable to state a plausible claim for relief, and the Court should dismiss the case. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009) ("determining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense.") (citing *Bell Atlantic Cor. v. Twombly*, 550 U.S. 544, 556 (2007)).

---

[22] RJN Ex. C at APP012 ("Battle Beaver Customs doesn't have any game controllers with adjustable mechanisms").

## **CONCLUSION**

For the foregoing reasons, Plaintiff's Complaint fails to state a claim for relief, and any amendment of the Complaint would be futile. Battle Beaver's products do not infringe on the clear language of the Patents' claims and specifications. By contrast, Plaintiff's proposed reading of the subject claims would render the Patents invalid. The Court should thus dismiss the Complaint with prejudice.

DATED: May 18, 2022

*/s/ William T. Reid, IV*
William T. Reid, IV (TX No. 00788817)
wreid@reidcollins.com
Gregory S. Schwegmann (TX No. 24117707)
gschwegmann@reidcollins.com
Jeremy H. Wells (TX No. 24098805)
jwells@reidcollins.com
**REID COLLINS & TSAI LLP**
1301 S Capital of Texas Hwy
Building C, Suite 300
Austin, Texas 78746
T: 512.647.6100
F: 512.647.6129

J. Benjamin King (TX No. 24046217)
bking@reidcollins.com
**REID COLLINS & TSAI LLP**
1601 Elm Street, Suite 4200
Dallas, Texas 75201
T: 214.420.8902
F: 214.420.8909

*Counsel for Defendant Battle Beaver, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on May 18, 2022, I filed the foregoing document electronically via the Court's ECF System, which effects service upon counsel of record.

*/s/ Jeremy H. Wells*
Jeremy H. Wells