**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| IRONBURG INVENTIONS LTD, | § | |
| Plaintiff, | § | |
| | § | |
| v | § | CASE NO. 3:22-CV-00686-X |
| | § | |
| BATTLE BEAVER, LLC, | § | |
| Defendant. | § | |

**<u>PLAINTIFF IRONBURG INVENTIONS LTD.'S RESPONSE IN OPPOSITION TO
DEFENDANT BATTLE BEAVER, LLC'S MOTION TO DISMISS</u>**

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION AND SUMMARY OF ARGUMENT .................................................. 1

II.    THE ASSERTED PATENTS ......................................................................................... 2

III.   ARGUMENT AND AUTHORITIES ............................................................................. 4

     A.     Legal Standards ................................................................................................. 4

          1.     Rule 12(b)(6) .......................................................................................... 4

          2.     Patent Eligibility under 35 U.S.C. § 101 and *Alice* .................................... 5

     B.     Battle Beaver Fails to Prove that the Claims are Ineligible Under § 101 .............. 6

          1.     *Alice* Step One: Battle Beaver Fails to Show that the Claims are Directed to an Abstract Idea ...................................................................................... 7

          2.     *Alice* Step Two: The Claims Add an Inventive Concept ........................... 13

          3.     Battle Beaver's Section 101 Eligibility Argument Is Premature .............. 14

     C.     Battle Beaver's Non-Infringement Argument is Inappropriate at the Pleading Stage ............................................................................................................... 16

IV.   CONCLUSION ......................................................................................................... 19

## TABLE OF AUTHORITIES

**Cases**                                         **Page(s)**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
890 F.3d 1354 (Fed. Cir. 2018)........................................................................5

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
882 F.3d 1121 (Fed. Cir. 2018)..........................................................6, 14, 15

*Affinity Labs of Tex., LLC v. DirectTV, LLC*,
838 F.3d 1253 (Fed. Cir. 2016)........................................................................8

*Alice Corp. Pty. v. CLS Bank Int'l*,
573 U.S. 208 (2014)............................................................................... *passim*

*Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*,
841 F.3d 1288 (Fed. Cir. 2016)........................................................................7

*AR Design Innovations LLC v. Ashley Furniture Indus., Inc.*,
No. 4:20-CV-392-SDJ, 2021 WL 1213551 (E.D. Tex. Mar. 30, 2021) .........................7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................4

*Bancorp Servs., LLC v. Sun Life Assurance Co. of Can.*,
687 F.3d 1266 (Fed. Cir. 2012)......................................................................15

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................................4

*Berkheimer v. HP Inc.*,
881 F.3d 1360 (Fed. Cir. 2018)..........................................................5, 6, 7, 14

*Bilski v. Kappos*,
561 U.S. 593 (2010)........................................................................................5

*Blue Yonder Grp. v. Kinaxis Inc.*,
No. 3:20-CV-03636-K, 2021 WL 2698437 (N.D. Tex. May 17, 2021) .........................15

*Cap Export, LLC v. Zinus, Inc.*,
No. 2:16-cv-00371-SVW-MRW, 2019 WL 982883 (C.D. Cal. Jan. 24, 2019) .............................9

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
927 F.3d 1306 (Fed. Cir. 2019)........................................................................5

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
776 F.3d 1343 (Fed. Cir. 2014)..................................................................................8

*Elec. Power Grp., LLC v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016)..................................................................................8

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016)..........................................................................6, 7, 10

*Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.*,
No. 2:15-cv-1202-WCB, 2016 WL 1643315 (E.D. Tex. Apr. 26, 2016) ....................18

*Freeny v. Fossil Grp., Inc.*,
No. 2:18-CV-00049-JRG-RSP, 2019 WL 1089145 (E.D. Tex. Feb. 12, 2019), *report and rec. adopted*, 2019 WL 1083779 (E.D. Tex. Mar. 7, 2019) ..........................................9

*Gestion Proche, Inc. v. Dialight Corp.*,
No. 4:16-CV-00407, 2017 WL 1551606 (E.D. Tex. May 1, 2017) .............................18

*GREE, Inc. v. Supercell OY*,
No. 2:19-CV-70-JRG-RSP, 2020 WL 896771 (E.D. Tex. Jan. 21, 2020), *report and rec. adopted*, 2020 WL 887733 (E.D. Tex. Feb. 24, 2020) ...........................8, 11, 13, 14, 17

*H-W Tech., L.C. v. Amazon.com, Inc.*,
No. 3:11-CV-0651-G, 2013 WL 3146777 (N.D. Tex. June 20, 2013).........................17

*ID Image Sensing LLC v. OmniVision Techs., Inc.*,
No. 20-136-RGA, 2020 WL 6888270 (D. Del. Nov. 24, 2020) ................................9, 13

*IDB Ventures, LLC v. Charlotte Russe Holdings, Inc.*,
No. 2:17-CV-523-WCB-RSP, 2018 WL 3426282 (E.D. Tex. July 16, 2018) ...............18

*Immersion Corp. v. Fitbit, Inc.*,
313 F. Supp. 3d 1005 (N.D. Cal. 2018) ......................................................................9

*In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*,
681 F.3d 1323 (Fed. Cir. 2012)..................................................................................17

*In re TLI Commc'ns LLC*,
823 F.3d 607 (Fed. Cir. 2016)....................................................................................8

*Internet Pats. Corp. v. Active Network, Inc.*,
790 F.3d 1343 (Fed. Cir. 2015)..................................................................................8

*Lone Star Fund V L.P. v. Barclays Bank PLC*,
594 F.3d 383 (5th Cir. 2010) ....................................................................................18

*Lowrey v. Tex. A&M Univ. Sys.*,
117 F.3d 242 (5th Cir. 1997) ..............................................................................5

*Lumitech IP LLC v. Ikea Supply AG*,
No. 2:20-CV-04399-JDW, 2021 WL 4499407 (E.D. Pa. Apr. 22, 2021) ......................................9

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
837 F.3d 1299 (Fed. Cir. 2016).......................................................................10, 11

*Microsoft Corp. v. i4i LP*,
564 U.S. 91 (2011)..........................................................................................5, 6

*Mirror Imaging, LLC v. PNC Bank, N.A.*,
No. W-21-CV-00518-ADA, 2022 WL 229363 (W.D. Tex. Jan. 26, 2022) ...................................10

*My Health, Inc. v. Lifescan, Inc.*,
No. 2:14-cv-683-RWS-RSP, 2015 WL 13469638 (E.D. Tex. Mar. 19, 2015)..............................15

*Nalco Co. v. Chem-Mod, LLC*,
883 F.3d 1337 (Fed. Cir. 2018)...........................................................................17

*NetSoc, LLC v. Match Grp., LLC*,
No. 3:18-CV-01809-N, 2019 WL 3304704 (N.D. Tex. July 22, 2019), *aff'd*, 838 F. App'x
544 (Fed. Cir. 2020)....................................................................................8, 10

*OLA, LLC v. Builder Homesite, Inc.*,
661 F. Supp. 2d 668 (E.D. Tex. 2009) ....................................................................18

*Ottah v. Fiat Chrysler*,
884 F.3d 1135 (Fed. Cir. 2018)...........................................................................17

*PM Holdings, LLC v. Heart of Tex. Surgery Ctr., PLLC*,
No. 6:21-CV-00644-ADA, 2022 WL 1004644 (W.D. Tex. Apr. 4, 2022) ....................................9

*Prust v. Softlayer Techs., Inc.*,
No. 2:09-CV-236-TJW-CE, 2010 WL 11629082 (E.D. Tex. Apr. 9, 2010) ................................18

*SAP Am., Inc. v. InvestPic, LLC*,
898 F.3d 1161 (Fed. Cir. 2018)...........................................................................10

*Slyce Acquisition Inc. v. Syte-Visual Conception Ltd.*,
No. W-19-CV-00257-ADA, 2020 WL 278481 (W.D. Tex. Jan. 10, 2020) ..........................14, 15

*Sourcing Mgmt., Inc. v. Simclar, Inc.*,
118 F. Supp. 3d 899 (N.D. Tex. 2015) ....................................................................5

*StoneEagle Servs., Inc. v. Davis*,
No. 3:13-CV-00894-P, 2013 WL 12143946 (N.D. Tex. Aug. 14, 2013) ....................7, 11, 15, 16

*TecSec, Inc. v. Adobe Inc.*,
978 F.3d 1278 (Fed. Cir. 2020).............................................................................10, 11

*Thales Visionix Inc. v. United States*,
850 F.3d 1343 (Fed. Cir. 2017).............................................................................6, 10, 12

*Ultramercial, Inc. v. Hulu, LLC*,
722 F.3d 1335 (Fed. Cir. 2013).............................................................................7, 8, 10, 11, 15

*Ventures II LLC v. FedEx Corp.*,
No. 2:16-CV-00980-JRG, 2018 WL 7823098 (E.D. Tex. May 10, 2018) ....................................14

*WiAV Networks, LLC v. 3com Corp.*,
No. 5:09-CV-101-DF, 2009 WL 6048922 (E.D. Tex. Dec. 15, 2009) .........................................18

**Statutes**

35 U.S.C. § 101 ......................................................................................... *passim*

35 U.S.C. § 102 ......................................................................................... 13

35 U.S.C. § 103 ......................................................................................... 13

35 U.S.C. § 282(a) .......................................................................................5

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)................................................................................. *passim*

Plaintiff Ironburg Inventions Ltd. ("***Plaintiff***" or "***Ironburg***") files this Response in Opposition to Defendant Battle Beaver, LLC's ("***Defendant***" or "***Battle Beaver***") Motion to Dismiss (Dkt. #18) (the "***Motion***"), as follows:

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Battle Beaver does not argue that the allegations in Ironburg's complaint are insufficient to state a plausible claim for relief under the *Iqbal/Twombly* standard. Instead, it asks this Court, via a Rule 12(b)(6) motion, (1) to invalidate 43 claims from three different patents under § 101, before claim construction, without discovery, and without addressing any of the actual claim elements; or (2) in the alternative, to dismiss Ironburg's complaint based on nothing more than its bare assertion that its products do not infringe. Especially in light of the fact that patents are presumed valid, these arguments are premature and unavailing.

First, courts consistently refuse to decide § 101 patent-eligibility issues at the motion to dismiss stage. In any event, Battle Beaver's argument that the claims are directed to an "abstract idea" fails at both steps of the *Alice* test. Both its step one and step two arguments rely entirely on overgeneralizing the claims at a high level of abstraction and ignoring the actual claim elements, which defies Federal Circuit precedent requiring such analyses to focus on the claims themselves and not on overgeneralizations. Moreover, as for step one, Battle Beaver fails to cite *a single case* that supports its theory that claims describing a physical game controller could even arguably be characterized as being direct to an abstract idea. To the contrary, the body of post-*Alice* case law confirms just the opposite. Simply, these patents relate to physical mechanisms, not processes. As to step two of the *Alice* test, Battle Beaver does not even make any argument as to why or how the claim limitations do not add an "inventive concept." Regardless, the Federal Circuit has made clear that this inquiry depends on questions of fact that cannot be decided on a motion to dismiss.

Second, Battle Beaver's non-infringement argument depends on claim construction that has not yet occurred, and the only "evidence" of non-infringement that it provides is a single conclusory statement by its counsel that its products do not infringe. But aside from these fatal deficiencies, both the Federal Circuit and courts in this District repeatedly hold that such claim construction/non-infringement arguments go to the merits of the case and that it is improper to decide such issues on a Rule 12(b)(6) motion.

## II.   THE ASSERTED PATENTS

This lawsuit involves three patents directed to video game controllers containing trigger control mechanisms that are adjusted: U.S. Patent Nos. 10,188,940 (the "***'940 Patent***"), 10,596,455 (the "***'455 Patent***"), and 11,185,766 (the "***'766 Patent***") (collectively, the "***Asserted Patents***"), each of which is entitled "Games Controller." The Asserted Patents identify and improve certain problems and shortcomings in the then-existing field of handheld video game controllers. *See* Dkt. #1-1, '940 Patent at 1:19–2:17. For example, their specification[1] explains:

- Depending on the video game, "it can be necessary to depress the trigger a distance before the trigger initiation point is reached and the command actually acknowledged. This renders part of the depressing action futile. Likewise, after the command has been operated, it is often possible to carry out further depression of the trigger past the trigger initiation point," which "is unnecessary and . . . disadvantageous." *Id.* at 1:35-42.

- "Furthermore, . . . in some video games, the strength of a command is increased or decreased in dependence upon how frequently the trigger is depressed. As such, depressing the trigger the whole distance is unnecessary and excessive." *Id.* at 1:43-47.

- "It is desirable to have a controller . . . for gaming applications, that is more responsive or has less scope for [] unnecessary over-movement by the user," and "for players to be able to customise their controllers . . . to gain increased control . . . ." *Id.* at 1:48-55.

The Asserted Patents describe and claim a novel, improved gaming controller comprising certain physical components configured to implement features that were not conventional prior to Ironburg's patents. In particular, the Asserted Patents describe the specific improvements and

---

[1] The Asserted Patents all share the same specification.

advancements they achieve with respect to the controller's physical functionality, including:

- "There are a variety of different commands available for the trigger functions of a game controller and the adjustable trigger system of the present invention now provides the option to customise the trigger settings . . . to suit the individual game." *Id.* at 1:65–2:2.

- Some embodiments enable "adjustments to the depressible range of the trigger so that effectively the trigger is already, to some degree, 'depressed', before any contact is actually made with the trigger by the operator," and/or "adjustments [so] that the trigger is depressible such that no further motion can be effected by the operator," which "removes any unnecessary distance travelled by the trigger." *Id.* at 2:3-12.

- "One advantage of the present invention is that it allows adjustments to be made to the trigger response," which "could be customised to suit the nature of the video game that is in use at the time of operation and/or the skill of the operator." *Id.* at 6:59-63.

- "A further advantage . . . is that it minimises the amount of motion an operator's finger must travel, therefore minimising the recovery time after a trigger initiation command has been made, allowing the operator to commence the command prompt again and again more rapidly, or to operate different commands quicker." *Id.* at 7:22-27.

The Asserted Patents claim physical apparatuses comprising specific tangible components arranged in a particular combination to achieve the improvements discussed above. For example, representative claims of the '940 Patent recite:

### Claim 2
An apparatus for supplying user inputs to a computer program for controlling the computer program, . . . comprising an outer case, at least one depressible trigger mechanism, and a first mechanism for adjusting a first end stop position of a range of motion of the at least one depressible trigger mechanism, . . . disposed within an internal volume defined by the outer case of the apparatus.

### Claim 4
A game controller for controlling electronic games, including a housing, at least one depressible trigger at least in part exposed relative to the housing, said at least one depressible trigger being in operational association with electrical circuitry contained within the housing, which . . . is controlled by depression of the at least one depressible trigger for manipulating electrical outputs . . . for controlling electronic games and the game controller having a mechanism which provides for manual adjustment of a depressible range of the at least one depressible trigger mechanism.

*Id.* at 7:65–8:5 & 8:12-22.  Representative claims of the '455 Patent recite:

### Claim 1
An apparatus for providing a user input to a computer program for controlling the computer program, the apparatus comprising:

  an outer case;

at least one depressible trigger pivotally mounted to the apparatus and resiliently biased to a first position, . . . having an outer surface configured for engagement during operation . . . and an inner surface opposite the outer surface; and

a mechanism for adjustment of a range of motion of the at least one depressible trigger,

wherein the mechanism is configured to be inserted into a void behind the inner surface of the depressible trigger wherein the void is defined by the outer case, and

wherein the mechanism is configured such that when the mechanism is inserted, the inner surface of the depressible trigger contacts the mechanism to adjust the range of motion . . . by changing a degree of rotation of the depressible trigger.

**Claim 17**
A game controller for controlling an electronic game, . . . comprising:

a housing;

at least one depressible trigger at least partially disposed within the housing comprising a first surface configured to be engaged by a user . . . and a second surface . . . defining a pathway when the at least one trigger is depressed;

electrical circuitry contained within the housing, wherein the at least one depressible trigger is in operational association with the electrical circuitry . . . ;

a trigger adjustment system disposed within the housing in the pathway of the second surface . . . in communication with the at least one depressible trigger, . . . configured to adjust a range of depressible motion of the . . . depressible trigger.

Dkt. # 1-2, '455 Patent at 7:60–8:14 & 9:12–10:8. The '766 Patent claims similar physical devices comprising tangible components, and the differences are not material to Battle Beaver's Motion or this response.

### III.     ARGUMENT AND AUTHORITIES

#### A.     Legal Standards

#### 1.   Rule 12(b)(6)

Dismissal at the pleading stage is improper if a complaint alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This plausibility standard is met if the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A motion to dismiss "must be denied if in the light most

favorable to the plaintiff and with every doubt resolved in the pleader's favor . . . the complaint states any legally cognizable claim for relief." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 890 F.3d 1354, 1357 (Fed. Cir. 2018); *see also Sourcing Mgmt., Inc. v. Simclar, Inc.*, 118 F. Supp. 3d 899, 912 (N.D. Tex. 2015) ("[T]he court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff."). In the Fifth Circuit, a Rule 12(b)(6) motion "is viewed with disfavor and is rarely granted." *Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). Dismissal cannot be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts . . . which would entitle him to relief." *Id.*

### 2. Patent Eligibility under 35 U.S.C. § 101 and *Alice*

An issued patent and its claims are presumed to be valid, and that presumption can only be overcome by clear and convincing evidence of ineligibility. *See* 35 U.S.C. § 282(a); *Microsoft Corp. v. i4i LP*, 564 U.S. 91, 95-97 (2011); *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir. 2019). This presumption and burden of proof applies to patent eligibility under 35 U.S.C. § 101. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1360 (Fed. Cir. 2018).

Section 101 defines patent-eligible subject matter as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. In choosing such expansive terms to define patent eligibility, Congress took a "permissive approach to patent eligibility." *Bilski v. Kappos*, 561 U.S. 593, 601 (2010) (noting "Congress plainly contemplated that the patent laws would be given wide scope"). There are only three narrow exceptions to § 101's broad eligibility principle: laws of nature, physical phenomena, and abstract ideas. *Id.*; *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). The Supreme Court has cautioned against applying these exceptions broadly, stating courts must "tread carefully in construing this exclusionary principle, lest it swallow all of patent law," because "[a]t some level, 'all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural

phenomena, or abstract ideas.'" *Alice*, 573 U.S. at 217 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012)).

In *Alice*, which involved method claims directed at a "process," the Supreme Court established a two-step test for determining whether a patent merely claims an ineligible abstract idea. At step one, the court must "determine whether the claims at issue are directed to one of those patent-ineligible concepts." *Alice*, 573 U.S. at 217. This analysis focuses on the claim language, considered in light of the specification, to assess whether a claim's "character as a whole is directed to excluded subject matter." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016). If the claims are not directed to an abstract idea, the inquiry ends: the claims are patent-eligible. *See id.* at 1339; *Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1349 (Fed. Cir. 2017).

If the claims are directed to an abstract idea, the court proceeds to step two, which requires the court to "consider the elements of each claim both individually and as an ordered combination" to determine if they add an "inventive concept" such that the nature of the claim is a patent-eligible application. *Alice*, 573 U.S. at 217-18 (internal quotation marks and citations omitted). Even if an invention is directed to an abstract idea, it is still patentable if the elements or combination thereof amount to more than a patent on merely the ineligible concept itself. *Id.* An inventive concept exists if the claim limitations "involve more than performance of well-understood, routine, and conventional activities previously known to the industry." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018) (collecting cases). And that determination is a question of fact. *Id.* Also, the "mere fact that something is disclosed in [] prior art . . . does not mean it was well-understood, routine, and conventional." *Berkheimer*, 881 F.3d at 1369.

## B.     Battle Beaver Fails to Prove that the Claims are Ineligible Under § 101

To prove claims are patent-ineligible through a Rule 12(b)(6) motion, "the *only* plausible reading of the patent must be that there is clear and convincing evidence of ineligibility."

*StoneEagle Servs., Inc. v. Davis*, No. 3:13-CV-00894-P, 2013 WL 12143946, at *6 (N.D. Tex. Aug. 14, 2013) (emphasis in original) (citing *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1339 (Fed. Cir. 2013)). Any fact relevant to the patent eligibility inquiry must be proven by clear and convincing evidence. *Berkheimer*, 881 F.3d at 1368. Battle Beaver fails to meet its burden for either step of the *Alice* inquiry.

### 1. *Alice* Step One: Battle Beaver Fails to Show that the Claims are Directed to an Abstract Idea

The claims of the Asserted Patents are—on their face—not directed to an abstract idea. To the contrary, they describe and claim physical, tangible video game controllers comprising a combination of physical components that serve particular operational functions. The proposition that an invention of this concrete nature is directed to an abstract idea defies logic and reason, and is unsupported by post-*Alice* precedent. Tellingly, Battle Beaver does not cite a single case where a court has found similar subject matter to be directed to an abstract idea. The Court should deny the Motion on this basis alone and need not proceed to step two.

### a. The Tangible Devices Claimed in the Asserted Patents are Non-Abstract, Patent-Eligible inventions

Because the Supreme Court has not created a definitive rule for what constitutes an "abstract idea" under *Alice*, courts often determine whether challenged claims recite an abstract idea by analyzing whether they are analogous to what courts have previously deemed abstract. *See Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294-95 (Fed. Cir. 2016); *Enfish*, 822 F.3d at 1334; *AR Design Innovations LLC v. Ashley Furniture Indus., Inc.*, No. 4:20-CV-392-SDJ, 2021 WL 1213551, at *4 (E.D. Tex. Mar. 30, 2021) ("In determining whether claims are directed to an unpatentable abstract idea, courts are instructed to look to the Federal Circuit's large body of post-*Alice* decisions."). Here, the post-*Alice* case law confirms that the physical controllers claimed in the Asserted Patents do not even arguably fall within the realm of ineligible abstract ideas.

Battle Beaver does not attempt to compare the claims at issue to those analyzed in post-*Alice* case law. Indeed, *none* of the cases cited by Battle Beaver involved an invention that is at all analogous to the physical controllers claimed in the Asserted Patents—they *all* involved claims directed to computer-implemented methods, processes, or systems. *See Ultramercial*, 772 F.3d at 715 ("method of using advertising as an exchange or currency"); *NetSoc, LLC v. Match Grp., LLC*, No. 3:18-CV-01809-N, 2019 WL 3304704, at *2 (N.D. Tex. July 22, 2019), *aff'd*, 838 F. App'x 544 (Fed. Cir. 2020) ("method for establishing a social network"); *In re TLI Commc'ns LLC*, 823 F.3d 607, 613 (Fed. Cir. 2016) (method for "classifying and storing digital images"); *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1351 (Fed. Cir. 2016) ("methods for . . . collecting data from multiple data sources, analyzing the data, and displaying the results"); *Internet Pats. Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1344-48 (Fed. Cir. 2015) (method of providing intelligent user interface to online application); *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1345-49 (Fed. Cir. 2014) ("method of processing information" by "extracting and storing data"); *Affinity Labs of Tex., LLC v. DirectTV, LLC*, 838 F.3d 1253, 1255-62 (Fed. Cir. 2016) (broadcast system directed to requesting, receiving, and transmitting network-based content). Notably, the one gaming-related case cited by Battle Beaver actually resulted in the court finding the claims were *not* directed to an abstract idea. *See GREE, Inc. v. Supercell OY*, No. 2:19-CV-70-JRG-RSP, 2020 WL 896771, at *4-8 (E.D. Tex. Jan. 21, 2020), *report and rec. adopted*, 2020 WL 887733 (E.D. Tex. Feb. 24, 2020) (denying Rule 12 motion). In sum, even basing the analysis on the oversimplified characterization that the Asserted Patents claim a "mechanism installed in the trigger pathway that shortens the trigger's range of motion," Dkt. #18 at 9, Battle Beaver still fails to city *any case law* to support that such claims are directed to an abstract idea.

Ironburg's invention—a video game controller containing specific physical components that shorten a trigger's possible range of motion—is fundamentally dissimilar from the non-tangible methods and processes at issue in all of the above cases. As another Texas federal district court held, the asserted claims here are "not directed to an abstract idea, but rather [are] drawn to a physical device" in which "the components are used to perform a specific improvement over existing prior art." *Freeny v. Fossil Grp., Inc.*, No. 2:18-CV-00049-JRG-RSP, 2019 WL 1089145, at *5 (E.D. Tex. Feb. 12, 2019), *report and rec. adopted*, 2019 WL 1083779 (E.D. Tex. Mar. 7, 2019). Similarly, in *PM Holdings, LLC v. Heart of Tex. Surgery Ctr., PLLC*, the claims were "directed to physical structures that include . . . physical devices [] and other physical components," and the court held "[n]either the physical components nor the collection are in any sense 'abstract.'" No. 6:21-CV-00644-ADA, 2022 WL 1004644, at *3 (W.D. Tex. Apr. 4, 2022) (also noting "Defendants' brief offers no post-*Alice* case identifying an abstract idea similar to what Defendants propose"). Countless courts in other districts have also consistently held claims are inherently non-abstract where, as here, the claimed invention is a device having specific physical features and tangible components that serve particular functions.[2] Even cases cited by Battle Beaver support that claims directed to physical devices such as those in the Asserted Patents

---

[2] *See, e.g.*, *Immersion Corp. v. Fitbit, Inc.*, 313 F. Supp. 3d 1005, 1023 (N.D. Cal. 2018) (denying motion to dismiss, finding "the claim clearly focuses on a tangible, non-abstract device as the invention which, through the . . . combination of components, contains [a] new and useful feature" and recites "various physical features of the claimed inventions, including . . . how an actuator can be coupled to the housing of the device"); *ID Image Sensing LLC v. OmniVision Techs., Inc.*, No. 20-136-RGA, 2020 WL 6888270, at *3 (D. Del. Nov. 24, 2020) (denying motion to dismiss, holding "it is important not to lose sight of the fact that this is a claim to a 'camera' . . . that has a number of specific, tangible sub-components," and "when the real-world, tangible, specific components of a device seem to predominate what is claimed, . . . this is not a claim to an abstract idea," but "a non-abstract, physical item"); *Lumitech IP LLC v. Ikea Supply AG*, No. 2:20-CV-04399-JDW, 2021 WL 4499407, at *2 (E.D. Pa. Apr. 22, 2021) (finding claims covering "a structure for an LED light . . . that can be adjusted in a way that LED lights previously could not" were not ineligible, as they "describe[] a 'module,' which . . . implies a specific structure, not just an abstraction"); *Cap Export, LLC v. Zinus, Inc.*, No. 2:16-cv-00371-SVW-MRW, 2019 WL 982883, at *5 (C.D. Cal. Jan. 24, 2019) (finding "a patent directed to the design of a bed" is not an "abstract idea," as it "is a physical object and easily overcomes the Section 101 limit on patentability").

are not abstract. *See Ultramercial*, 772 F.3d at 715-716 (noting the claims were "not tied to any particular novel machine or apparatus," but merely recited "an idea having no particular concrete or tangible form"); *NetSoc,* 2019 WL 3304704, at *2 ("If the claims are not directed at creating something physical, . . . they are likely directed at only abstract ideas.") (citing *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167-68 (Fed. Cir. 2018) (collecting cases)).

### b. Battle Beaver's Failure to Address the Actual Claim Elements Requires Denial of its Motion to Dismiss

Step one of the *Alice* test does not ask whether there is a patent-ineligible concept *underlying* the claims; it asks whether *the claims themselves* are *directed* to a patent-ineligible concept. *Thales*, 850 F.3d at 1349 (noting "it is not enough to merely identify a patent-ineligible concept underlying the claim") (citing *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1050 (Fed. Cir. 2016)). In conducting the step one analysis, courts "must focus on the language of the Asserted Claims themselves." *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1292 (Fed. Cir. 2020) (citing *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016)). And courts must avoid overgeneralizing the claims in the § 101 analysis, as "characterizing the claims at 'a high level of abstraction' that is 'untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule.'" *Id.* (quoting *Enfish*, 822 F.3d at 1337); *see also Mirror Imaging, LLC v. PNC Bank, N.A.*, No. W-21-CV-00518-ADA, 2022 WL 229363, at *7 (W.D. Tex. Jan. 26, 2022). Thus, in determining if claims are directed to an abstract idea, courts "must be careful to avoid oversimplifying the claims by looking at them generally and failing to account for the specific requirements of the claims." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016) (citations omitted).

In arguing that the Asserted Patents are directed to an "abstract idea," Battle Beaver fails to even mention (much less analyze) any of the actual claims or any of the elements recited therein.

*See* Dkt. #18 at 8-10; *StoneEagle*, 2013 WL 12143946, at *6 ("To be sure, 'the question of eligible subject matter must be determined on a claim-by-claim basis.'") (quoting *Ultramercial*, 722 F.3d at 1339). Instead, it argues that "to the extent the claims purport to cover *any* internal mechanism for blocking a trigger, they are directed to an abstract idea." Dkt. #18 at 8 (emphasis in original). This argument is an oversimplification of the Asserted Patents and overgeneralizes the claims by characterizing them at a high level abstraction—the very type of argument the Federal Circuit has repeatedly rejected. Moreover, it bases its argument *entirely* on a single sentence in a pre-suit letter from Ironburg's counsel to Battle Beaver. *See id.* at 9 (arguing the claims are directed to an abstract idea because "*[a]ccording to Plaintiff's own cease-and-desist letters . . .* the claims at issue cover *any* 'mechanism installed in the trigger pathway . . . .*"*) (emphasis added). Battle Beaver then relies on that statement—which it improperly designates as "Plaintiff's proposed claim construction"— to argue that "[Ironburg's] interpretation" is supposedly indicative of an abstract idea. *Id.* at 9-10. Such an argument wholly ignores "the language of the Asserted Claims themselves" and "the specific requirements of the claims." *TecSec*, 978 F.3d at 1292; *McRO*, 837 F.3d at 1313.[3]

Battle Beaver's reliance on an over-generalization of the claims instead of analyzing the actual claim language itself compels denial of its Motion. *See GREE*, 2020 WL 896771, at *4-5 ("Defendant has not met its burden of showing . . . an abstract idea" because its "analysis of *Alice* Step One provides little discussion as to the actual language of the claims" and "over-generalizes the claims and describes them at too high of a level of abstraction.").

Battle Beaver's Motion also fails to address "what the patent asserts to be the 'focus of the claimed advance over the prior art'" as required by the step one inquiry. *TecSec*, 978 F.3d at 1292. That is likely because even a cursory review of the Asserted Patents confirms that the claimed

---

[3] Moreover, the letter on which Battle Beaver relies does not even mention either the '455 Patent or the '766 Patent. *See* Dkt. #18 at 9 n.14 (citing RJN Ex. D at APP020).

invention—a video game controller that solves a particular problem relating to existing controllers' physical configuration—cannot logically be described as being directed to an "abstract idea." *cf. SAP*, 898 F.3d at 1168 (comparing *Thales*, where "the improvement was in a physical tracking system" and thus *not* an abstract idea, and finding "[h]ere, in contrast, the focus of the claims is not a physical-realm improvement but an improvement in . . . the selection and [] analysis of information"). As alleged in the complaint, Ironburg's patented inventions "increase users' hand usage and reaction time, improve gameplay, and allow users to play . . . more ergonomically." Dkt. #1 ¶ 10. And as set forth in Section II above, the specifications describe the various advances that the claimed inventions achieve over the prior art, *see supra* at pp. 2-4, none of which are focused on abstract concepts, but rather on novel operational features of a physical gaming controller.

### c. Battle Beaver's Prior Art Argument Is Inapposite

Finally, Battle Beaver appears to argue that the existence of certain prior art references covering trigger blocks indicates that the Asserted Patents are directed to an abstract idea. Dkt. #18 at 9-10 (arguing the PTO "has issued numerous patents for a variety of different 'mechanisms . . . that shorten the trigger's range of motion,'" and therefore "the idea of blocking the path of the trigger" is an abstract idea) (emphasis added) (citing *Alice*, 573 U.S. at 216).[4]

This argument is based on the false premise that the Asserted Patents claim "the *idea* of blocking the path of the trigger," *no matter the field of use*—be it a video game controller, a firearm, a water gun, a spray bottle, a glue gun, a tally counter, etc.—and *no matter how the product is physically configured to achieve that end*. But that is not the case (nor is it Ironburg's position). The Asserted Patents cover computer or game controllers containing a trigger-modification mechanism that embodies each of the elements specifically recited in the claims. As another court

---

[4] Notably, Battle Beaver concedes that "*most . . . of these patents deal with firearm triggers*[.]" *Id.* at 10.

held when rejecting a similar theory raised as a supposed § 101 argument:

> Defendant's argument against patent eligibility seems to be that claim 1 merely recites [an invention] that was already known in the prior art. [] In other words, . . . it really seems to be arguing that the claim is invalid for anticipation under 35 U.S.C. § 102, or for obviousness under 35 U.S.C. § 103—as opposed to arguing that the claim is directed to an abstract idea. But whether [the claimed subject-matter] existed in the prior art . . . is a separate and distinct inquiry from the Section 101 inquiry.

*ID Image Sensing*, 2020 WL 6888270, at *5 (denying motion to dismiss). The same reasoning applies to Battle Beaver's apparent argument here.

### 2. *Alice* Step Two: The Claims Add an Inventive Concept

Even if the Court were to reach the second step under *Alice*, the Asserted Patents' claims would still be patent eligible because they recite an inventive concept.

This step requires the Court to "consider the elements of each claim both individually and 'as an ordered combination'" to determine whether they contain an "inventive concept." *Alice*, 573 U.S. at 217. However, Battle Beaver's step two argument does not mention, much less analyze, any of the elements recited in the claims themselves—either individually or as an ordered combination—in the context of arguing that the claims do not add an inventive concept.[5] This failure alone is fatal to Battle Beaver's Motion. *See GREE*, 2020 WL 896771, at *4 ("Defendant has not met its burden . . . at *Alice* Step Two" because it "fails to analyze the actual claim language—the Motion to Dismiss does not discuss several limitations in the claim . . . Without more, the Court cannot grant this Motion."). Instead, Battle Beaver repeats the same general statement from Ironburg's cease-and-desist letter and merely concludes, vaguely, that "[r]ead as such, the claims clearly fail the *Alice* test for patentability under section 101." Dkt. #18 at 10.

---

[5] To clarify, while Battle Beaver does identify some elements that it cherry-picks from certain claims, it does so only in support of its argument that the "manual adjustability limitation . . . warrant dismissal *for lack of infringement*." Dkt. #18 at 11-12 (emphasis added). But that is not an *Alice*/§ 101 argument.

Furthermore, Battle Beaver does not make any arguments as to why or how the claims merely recite routine, conventional, or well-known activities and do not add an inventive concept. Instead, Battle Beaver appears to argue that, to the extent the claims add an inventive concept, its products do not infringe because they do not meet the limitation that would make the claims inventive. *See* Dkt. #18 at 11-12. But that argument is not about patent eligibility.

Regardless, whether claims are "inventive" or merely recite elements that are well-understood, routine, and conventional in the relevant field is a fact question that cannot be decided on a motion to dismiss. *See Aatrix*, 882 F.3d at 1128; *Berkheimer*, 881 F.3d at 1368. Moreover, the Asserted Patents describe the inventions' inventive features that solve a problem in the field of gaming controllers, *see supra*, Section II, at pp. 2-4, and "the Court must take the allegations made in . . . the [] Patent, attached to the Complaint, as true." *Intell. Ventures II LLC v. FedEx Corp.*, No. 2:16-CV-00980-JRG, 2018 WL 7823098, at *9 (E.D. Tex. May 10, 2018) (denying Rule 12 motion and relying on patent's descriptions of problems the invention solved for purposes of step two analysis); *see GREE*, 2020 WL 896771, at *2 ("Specific improvements described in a patent specification . . . create a factual dispute regarding whether the invention describes well-understood, routine, and conventional activities.") (citing *Berkheimer*, 881 F.3d at 1369).

### 3. Battle Beaver's Section 101 Eligibility Argument Is Premature

Battle Beaver seeks to invalidate under § 101 twelve independent claims and 31 dependent claims from three different patents[6] via a Rule 12(b)(6) Motion—without claim construction, fact discovery, or expert discovery, and without even addressing the elements of the patent claims. But "resolving a patent's § 101 eligibility is rarely appropriate as a Rule 12(b) motion." *Slyce*

---

[6] The claims at issue include independent claims 1, 2, 4, 5, 6, and 8, and ten dependent claims, of the '940 Patent; independent claims 1, 12, and 17, and ten dependent claims, of the '455 Patent; and independent claims 1, 12, and 17, and eleven dependent claims, of the '766 Patent. *See* Dkt. #s 1-4 – 1-15 (Exs. D-O).

*Acquisition Inc. v. Syte-Visual Conception Ltd.*, No. W-19-CV-00257-ADA, 2020 WL 278481, at *3 (W.D. Tex. Jan. 10, 2020).

As courts in this District recognize, "it will be rare that a patent infringement suit can be dismissed at the pleading stage for lack of patentable subject matter." *StoneEagle*, 2013 WL 12143946, at *6 (citation omitted). This is so for a number of important reasons. First, because patents are presumed valid and require clear and convincing evidence of invalidity, Rule 12(b)(6) is not suitable for resolving patent-eligibility. *Id.*; *Slyce*, 2020 WL 278481, at *5. Second, as the "Federal Circuit has cautioned," the § 101 eligibility analysis "is rife with underlying factual issues." *StoneEagle*, 2013 WL 12143946, at *6 (quoting *Ultramercial*, 722 F.3d at 1339); *see also Aatrix*, 882 F.3d at 1128 (stating the § 101 analysis involves fact issues that "cannot be answered adversely to the patentee based on the sources properly considered on a motion to dismiss"); *Slyce*, 2020 WL 278481, at *6 (noting § 101 eligibility "almost certainly requires fact discovery"). Third, claim construction is usually necessary before a court can rule on § 101 eligibility. *See Bancorp Servs., LLC v. Sun Life Assurance Co. of Can.*, 687 F.3d 1266, 1273-74 (Fed. Cir. 2012); *StoneEagle*, 2013 WL 12143946, at *6; *Slyce*, 2020 WL 278481, at *5 (collecting cases) (noting "claim construction . . . in most cases, will affect a court's § 101 eligibility analysis"); *Blue Yonder Grp. v. Kinaxis Inc.*, No. 3:20-CV-03636-K, 2021 WL 2698437, at *2 (N.D. Tex. May 17, 2021) (denying dismissal, finding the claims "require claim construction before the Court can rule on . . . § 101" issues); *My Health, Inc. v. Lifescan, Inc.*, No. 2:14-cv-683-RWS-RSP, 2015 WL 13469638, at *1 (E.D. Tex. Mar. 19, 2015) ("[R]uling on eligibility before claim construction is only warranted in narrow circumstances" and is "the exception rather than the rule").

Given these principles, courts in this District recognize the necessity of waiting until after both fact discovery and claim construction to determine patent-eligibility, as a "ruling based on

[Rule 12] briefing alone without evidence invites pure guesswork." *StoneEagle*, 2013 WL 12143946, at *6 ("[T]he Court lacks a sufficient basis in fact to determine that the patent's subject matter is abstract" and "Defendants cannot show [otherwise] by clear and convincing evidence").

## C.   Battle Beaver's Non-Infringement Argument is Inappropriate at the Pleading Stage

Seemingly as an alternative to requesting that the Court find the claims invalid under *Alice*, Battle Beaver argues that the Court should grant dismissal on the basis of non-infringement. *See* Dkt. #18 at 11-12. Battle Beaver alleges that its products do not meet the limitations that it lists on pages 11 and 12 of its Motion. *See id.* This argument does not provide a sufficient basis for the Court to dismiss the complaint at this stage under Rule 12(b)(6).

Battle Beaver provides little substantive analysis for its "claim construction," does not attempt to conduct a proper *Phillips* analysis, fails to consider or even acknowledge most of the limitations recited in the asserted claims, and attempts to universally and indiscriminately apply its proposed construction to *all* of the claims at issue across the three Asserted Patents. More importantly, the entire basis of its non-infringement argument is a bare, unsubstantiated statement that its accused products "are not manually adjustable." *Id.* at 12. The only "evidence" cited to support this assertion is a similarly bare assertion in an email from Battle Beaver's counsel that simply states in conclusory fashion that it "doesn't have any game controller with adjustable mechanisms." *Id.* at 12 n.22 (quoting RJN Ex. C at APP012). This conclusory statement by Battle Beaver's counsel is not sufficient to negate Ironburg's factual allegations regarding infringement, particularly at this stage, where the Court must accept Ironburg's allegations as true and resolve in its favor any doubts or factual disputes regarding same.

Regardless, such claim construction/non-infringement arguments go to the merits of the case and are not a proper subject of a motion to dismiss. The Federal Circuit has consistently held that, because issues of infringement require analysis of the claim language and other intrinsic

evidence, as well as potential discovery and analysis of extrinsic evidence, it is improper to decide such issues on a motion to dismiss. *See, e.g.*, *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1347-50 (Fed. Cir. 2018) ("Defendants ask us to conclude that, under any construction," they could not infringe, but it "is not appropriate to resolve these disputes . . . without the benefit of claim construction. The purpose of a motion to dismiss is to *test the sufficiency of the complaint, not to decide the merits*.") (emphasis in original); *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1343 n.13 (Fed. Cir. 2012) ("[T]o the extent the district court based its assessment of the 'reasonableness' of a given inference of infringement on [defendant's] narrow construction of the patent's claims, *claim construction at the pleading stage—with no claim construction processes undertaken—was inappropriate. We afford the claims their broadest possible construction at this stage of the proceedings*.") (emphasis added). Likewise, courts in this District recognize that claims should not be construed at the motion to dismiss stage because it "is connected to the merits." *H-W Tech., L.C. v. Amazon.com, Inc.*, No. 3:11-CV-0651-G, 2013 WL 3146777, at *4 (N.D. Tex. June 20, 2013) (collecting cases). Even in the case Battle Beaver cites to support its position that claim construction is unnecessary, that court ultimately held "traditional claim construction proceedings would be the most appropriate way to resolve this dispute," as it "will ensure that the parties fully brief this issue" and "may resolve other issues as to claim scope that may impact the § 101 analysis." *GREE*, 2020 WL 896771, at *8; *see* Dkt. #18 at 8 (citing same). And the case Battle Beaver cites to support that there is "no plausible claim construction that could result in a finding of infringement" is inapposite to the facts here: the sole claim was directed to a book holder and recited books in numerous limitations, the accused products were a camera (not a book) holder, and the court had already made a prior claim construction ruling that foreclosed a non-infringement argument based on a doctrine of equivalents theory. *See Ottah v.*

*Fiat Chrysler*, 884 F.3d 1135, 1141-42 (Fed. Cir. 2018); Dkt. #18 at 12 (citing same).

Where, as here, an accused infringer argues in a motion to dismiss that it does not infringe based on its proffered construction of the claims, federal courts in Texas often refuse to even address the substance of such arguments and summarily reject them as a basis for dismissal.[7] As one court aptly explained when faced with arguments similar to Battle Beaver's:

> [Defendant's] argument is, in essence, a combined claim construction and non-infringement argument. Its resolution turns on how "administers" is construed and what the evidence may show . . . . Claim construction proceedings have not yet been held in this case, and there is no evidence before the Court on the issue of infringement. . . . [I]t would be improper to resolve the dispute on procedural grounds . . ., pretermitting the claim construction process and the evidentiary presentations that may be made . . . . It may be that the proceedings will ultimately determine that the term "administering" does not reach [Defendant's] conduct . . . or that the evidence will show that Brookshire's pharmacies do not [infringe]. Those questions, however, are properly left for claim construction, summary judgment, or trial.

*Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.*, No. 2:15-cv-1202-WCB, 2016 WL 1643315, at *2-4 (E.D. Tex. Apr. 26, 2016). This is because a court's task at the Rule 12(b)(6) stage is simply "to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Lone Star Fund V L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *see also Eli Lilly*, 2016 WL 1643315, at *3 ("The test at this initial stage is not one of ultimate success," but "a threshold test that asks whether, taking all well-pleaded facts as true and view[ed] in the light most favorable to the plaintiff, the claim is plausible.").

---

[7] *See OLA, LLC v. Builder Homesite, Inc.*, 661 F. Supp. 2d 668, 673 (E.D. Tex. 2009) (denying motion to dismiss and declining to address non-infringement argument before claim construction); *Gestion Proche, Inc. v. Dialight Corp.*, No. 4:16-CV-00407, 2017 WL 1551606, at *3 (E.D. Tex. May 1, 2017) ("To engage in the claim construction process upon . . . a motion to dismiss would be to go beyond the scope of a court's traditional gatekeeping role . . . [T]he Court refuses to construe this key term without the benefit of full briefing"); *IDB Ventures, LLC v. Charlotte Russe Holdings, Inc.*, No. 2:17-CV-523-WCB-RSP, 2018 WL 3426282, at *1 (E.D. Tex. July 16, 2018) (denying Rule 12 motion on non-infringement, as it depended on "a claim construction issue that is not as clear-cut as DSW suggests and cannot be decided based on the limited showing [] in the motion"); *Prust v. Softlayer Techs., Inc.*, No. 2:09-CV-236-TJW-CE, 2010 WL 11629082, at *2 (E.D. Tex. Apr. 9, 2010); *WiAV Networks, LLC v. 3com Corp.*, No. 5:09-CV-101-DF, 2009 WL 6048922, at *4 (E.D. Tex. Dec. 15, 2009) ("The absence of a claim construction and evidentiary record weighs heavily against dismissing the claims.").

Based on this overwhelming weight of authority, the Court should reject Battle Beaver's non-infringement arguments and deny its Motion to Dismiss.

## IV.     CONCLUSION

For the foregoing reasons, Ironburg respectfully requests that the Court deny Battle Beaver's Motion to Dismiss (Dkt. #18) in its entirety.

Dated:  June 8, 2022                           Respectfully submitted,

DORSEY & WHITNEY LLP

*/s/ J. Brian Vanderwoude*
J. Brian Vanderwoude
Texas Bar No. 24047558
vanderwoude.brian@dorsey.com
Zachary B. Tobolowsky
Texas Bar No. 24106512
tobolowsky.zachary@dorsey.com
DORSEY & WHITNEY LLP
300 Crescent Ct, Suite 400
Dallas, TX 75201
(214) 981-9900 Phone
(214) 981-9901 Facsimile

Gregory S. Tamkin (*admitted pro hac vice*)
Colo. Reg. No. 27105
DORSEY & WHITNEY LLP
1400 Wewatta Street, Suite 400
Denver, Colorado 80202
(303) 629-3400

Robert J.M. Lee (*admitted pro hac vice*)
DORSEY & WHITNEY LLP
701 5th Ave, Suite 6100
Seattle, WA 98105
(206) 903-8800

**ATTORNEYS FOR PLAINTIFF
IRONBURG INVENTIONS LTD.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record via the Court's ECF system on June 8, 2022.

*/s/ J. Brian Vanderwoude*

J. Brian Vanderwoude

4890-6142-5187\